Argued December 22, 1919, demurrer to alternative writ sustained
February 10, 1920.

# BENSON v. OLCOTT, GOVERNOR.

(187 Pac. 843.)

**States—State Board of Control not Authorized to Sell Bonds to Meet Federal Aid for Highways Offered by Act of 1919.**

1. Under Laws of 1917, Chapter 175, Section 2; Id., Chapter 194, Section 38; Id., Chapter 237; Id., Chapter 423, Sections 3, 5-8, 10-12; Laws of 1919, Chapter 159; Id., Chapter 173, Sections 1, 4, 8, 12, 15; Id., Chapter 399, Section 37, and Id., Chapter 403, the state had no authority to sell bonds to equal in amount the federal aid for highways offered under Act Cong. Feb. 28, 1919.

**Statutes—Title not Sufficient to Authorize Issuance of Bonds to Meet State Aid.**

2. Laws of 1917, page 221, entitled "An act to accept the benefits of" Act Cong. July 11, 1916 (U. S. Comp. Stats., §§ 7477a–7477i), the Shakelford Bill providing for federal aid to states in construction of rural post roads, "and to provide for issuance of bonds * * to meet requirements of said federal statute," etc., *held* not to authorize issuance of additional bonds to equal the aid given by Act Cong. Feb. 28, 1919, notwithstanding Section 2 of the state statute, providing that such statute should cover "any other aid hereafter furnished by the United States," since to give effect to quoted words would violate Article IV, Section 20, of the Constitution, requiring an act to embrace but one subject, to be expressed in title.

**Statutes—When Amendment of Adopted Statute Does not Affect Adopting Statute.**

3. The amendment of an adopted statute does not, as between the adopting and the adopted statutes, affect the adopted statute when the adopting statute set out a complete copy of the adopted statute, including its title and date of approval, and then accepts it.

[As to the construction of an adopted statute, see note in **Ann. Cas. 1917B, 651.**]

**States—Authority to Sell Bonds must be Given by Clear Language.**

4. No officer or board should be adjudged to possess authority to sell bonds obligating the state to pay millions of dollars unless such authority is conferred in clear and express language.

**Mandamus—Sale of Bonds to Equal Federal Aid for Highways Discretionary With State Board of Control, and not to be Compelled.**

5. Under Act Jan. 20, 1920, providing that state board of control is "authorized, empowered in its discretion" to sell bonds to enable the state to match federal aid for highways available under the Shakelford Bill and under federal act of February 28, 1919, court will not by *mandamus* compel the board to sell the bonds, at least in

absence of allegations of special facts, the selling of the bonds being discretionary with the board.

**States—No Authority in State Highway Commission to Sell Bonds to Equal Federal Aid.**

6.   Under Act Jan. 20, 1920, providing that state board of control is "authorized, empowered in its discretion" to sell bonds to enable the state to match federal aid for highways available and under the Shakelford Bill and under federal act of February 28, 1919, the state highway commission has no authority to sell bonds to meet such federal aid; such authority, even if given by Laws of 1919, page 241, having been withdrawn by act of 1920.

Original proceeding in *mandamus* in Supreme Court.

In Banc.

Upon a petition filed in this court on December 4, 1919, by S. Benson, R. A. Booth and E. E. Kiddle, constituting the State Highway Commission, an alternative writ of *mandamus* was issued directing Ben W. Olcott, as Governor, Ben W. Olcott, as Secretary of State, and O. P. Hoff, as State Treasurer, constituting the State Board of Control, to sell the state's bonds to the amount of $1,000,000, or to show cause for not doing so. The defendants demurred to the writ.

DEMURRER TO ALTERNATIVE WRIT SUSTAINED.

*Mr. George M. Brown,* Attorney General, for the demurrer.

*Mr. J. M. Devers, contra.*

HARRIS, J.—When this special proceeding was brought a doubt existed in the minds of some of the state officials, who were charged with duties connected with the construction of roads, concerning the right and authority to sell bonds in order to secure funds with which to comply with the offer of the federal government to assist in road construction; and the real purpose of the parties to this proceeding was to secure a judicial interpretation of the road legislation which

was in force when the alternative writ of *mandamus* was issued, so that all would know with certainty whether any more bonds could be sold and what officers, if any, possessed authority to sell them.

There are eleven separate statutes which claim our attention. Two of these were enacted by Congress while the remaining nine were adopted by the legislative department of this state. Eight of these nine statutes were enacted in 1917 and 1919, while the ninth was adopted at the special session of the legislature held in January, 1920. Each of these statutes, except the one adopted in 1920, is discussed in one or both of the briefs filed by the litigants, and for that reason we shall refer to all of them. The federal enactments include an act, commonly known as the Shakelford Bill, which was approved July 11, 1916 (U. S. Comp. Stats., §§ 7477a–7477i), and another act which was approved February 28, 1919 (Chapter 69, 40 Stat. 1189), and is entitled:

"An act making appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1920, and for other purposes."

The eight state statutes adopted in 1917 and 1919 include the following: Chapter 175, Laws 1917, commonly known as the Bean-Barrett Bill; Chapter 194, Laws 1917, sometimes referred to as the Motor Vehicle Act; Chapter 237, Laws 1917, known as the Oregon Highway Law; Chapter 423, Laws 1917, usually mentioned as the Six Million Dollar Road Bonding Act; Chapter 159, Laws 1919, an act imposing a license tax on gasoline and other motor vehicle fuels; Chapter 173, Laws 1919, known as the Ten Million Dollar Road Bonding Act; Chapter 399, Laws 1919, an act licensing motor vehicles; and Chapter 403, Laws 1919, an act "to further define and protect the state highway fund."

By the terms of the Shakelford Bill the federal government offered to assist the several states in the construction of rural post roads and to co-operate with the states and with the counties of each state in the construction of forest roads and trails. The sum of $75,000,000 was appropriated to be expended during the period of five years in the construction of rural post roads. Any state accepting the terms of the act was entitled to receive its benefits. In effect the federal government agreed to pay one half of the cost of construction if the state obligated itself to pay the other half. The sum of $75,000,000 was divided into five parts, and each of these parts was allotted to a designated year in the five year period, and to each of the states accepting the terms of the act a specified share was apportioned so that upon compliance with the provisions of the Shakelford Bill the amount so apportioned to such state is made available to that state for road construction. Any part of the amount apportioned to a given state which remains unexpended at the end of the period during which it is available for expenditure, is lost to the state to which it was originally apportioned, and is then re-apportioned in the same way as if it were apportioned for the first time. The Shakelford Bill further authorizes the Secretary of Agriculture to enter into co-operative agreements with the states and counties for the construction of forest roads and trails upon a basis equitable to both the state or county and the United States, and for that purpose the sum of $10,000,000 was appropriated for expenditure during the period ending with June 20, 1926. There was originally apportioned to Oregon as its share under the Shakelford Bill the sum of $1,180,-310.55 for the construction of rural post roads and the sum of $638,970 for the construction of forest roads,

making a total of $1,819,280.55; but, due to the fact that some of the states did not accept the offer made by the Shakelford Bill, the amount available to the states which did accept the offer was enlarged, and this state secures as its share under the Shakelford Bill as originally enacted the sum of $1,181,416.50 for rural post roads and $638,970 for forest roads, or a total of $1,820,386.50.

The federal act which was approved February 28, 1919, purports to amend certain sections of the Shakelford Bill, and for the purpose of carrying out the provisions of the Shakelford Bill as amended, the act of 1919 enlarges the appropriation for the construction of rural post roads and materially increases the allotments for the fiscal years ending in 1919, 1920 and 1921. The federal act of 1919 also enlarges the appropriation for the construction of forest roads under co-operative agreements between the Secretary of Agriculture and the proper officials of the several states. In addition to the total sum of $1,820,386.50 which is payable to Oregon under the terms of the Shakelford Bill as originally enacted, this state is entitled by force of the provisions of the federal act of 1919 to the further sum of $3,150,761.77 for rural post roads and the further sum of $638,970, for forest roads, or a total additional sum of $3,789,731.77. In other words, the grand total of the federal funds set aside by the Shakelford Bill as originally adopted in 1916 and as subsequently amended in 1919 for aid in road construction in this state is $5,610,118.27.

The State of Oregon, through its legislature, accepted the terms of the Shakelford Bill by enacting Chapter 175, Laws 1917, otherwise known as the Bean-Barrett Bill. By the terms of Section 2 of this act, the officers having control of the state highways are

required, out of the moneys received in the highway funds of the state each year, first to set aside a sufficient amount to comply with the requirements of the Shakelford Bill, and if there is any deficiency in the highway fund for such purpose, then the State Board of Control is "authorized, empowered and directed each year during the next five years" to sell a sufficient amount of the bonds of the state

"to raise enough money which, taken together with any money available from appropriations from other funds of the state of Oregon, if any there be, to equal the amount required of the state of Oregon in order to fully meet the requirements, conditions and provisions" of the Shakelford Bill; "provided, however that such bonds shall not be issued unless necessary to enable the state of Oregon to avail itself of the Federal aid as provided hereinabove, or any other aid hereafter furnished by the United States."

Pursuant to the authority granted in the Bean-Barrett Bill, the State Board of Control has sold bonds aggregating $1,200,000, and whenever additional bonds to the amount of $620,386.50 are sold then the State Board of Control will have sold a total of $1,820,386.50, or the full amount available to this state under the Bean-Barrett Bill as originally enacted. The State Highway Commission has requested the Board of Control to sell additional bonds to the amount of $1,000,000, since that sum is required in order to secure to this state its full share of the moneys which have been apportioned to it under the Shakelford Bill and the amendatory act of 1919.

Chapter 194, Laws 1917, a motor vehicle act, provides for the collection of license fees from owners of motor vehicles. This statute is of interest only to the extent that it furnished possible funds which could be used to meet the requirements of the Shakelford Bill.

By the terms of Section 38, any balance of fees remaining after paying certain expenses became available on December 31st of each year for the purpose of matching the moneys apportioned to Oregon by the Shakelford Bill. At the next session of the legislature, however, another motor vehicle act, Chapter 399, Laws 1919, was enacted, and this statute provides for the licensing of motor vehicles and disposes of any balance remaining after the payment of expenses. Chapter 194, Laws 1917, is further affected by Chapter 423, Laws 1917, for by Section 12 of the latter statute any balance remaining after the payment of certain expenses may be used by the State Highway Commission

"in payment of the interest and principal as same shall become due upon bonded indebtedness of the State of Oregon, contracted for road purposes under the provisions of this Act or the provisions of Chapter 175, Laws 1917."

Chapter 237, Laws 1917, which became effective on February 19, 1917, and is known as the Oregon highway law, creates the State Highway Commission, again assents to the Shakelford Bill, requires the State Tax Commission each year to make a state levy equal to one fourth of a mill on each dollar of assessable property, directs that this tax when collected "shall with any and all road funds, become a part of the state highway fund," and apportions the highway fund by directing the State Highway Commission to set aside from the highway fund: (1) An amount sufficient for the salaries and expenses of the state highway department; (2) a sufficient amount to cover the cost of operating and maintaining state highways which have been constructed; (3) sufficient funds to meet "the federal government appropriation and requirements" of the Shakelford Bill "or any federal appropriation

that may be hereafter provided"; and (4) "the remainder shall be used for any purposes of this act."

Chapter 423, Laws 1917, known as the Six Million Dollar Road Bonding Act, was submitted to the people and approved by them at an election held June 4, 1917. The State Highway Commission is by Section 3 of this act authorized to issue bonds "for the purpose of carrying out the provisions of this act in an amount not exceeding $6,000,000." Section 5 prescribed that the moneys arising from the sale of these bonds shall be deposited in the state treasury to the credit of a special fund "which shall be used in carrying into effect the provisions of this act." Section 6 designates certain roads as hard surfaced roads; and Section 7 names certain highways as post roads. Section 6 opens by declaring that the highways described in Sections 6 and 7 "are hereby determined to be the highways of first importance to the general public of the State of Oregon," and by the next sentence "it is hereby determined" that eight several highways should be permanently constructed and finished with a hard surface. Section 8, after enumerating five different roads as forest roads, declares that "the funds with which to pay the portion of the expense of construction of said post roads * * payable by the State of Oregon, shall be secured from the sale of bonds as is provided in" Chapter 175, Laws 1917. Section 10 is to the effect that all funds required for finishing and hard surfacing the enumerated hard surface roads "shall be derived from the sale of said bonds, provided for in Section 3." The State Highway Commission is directed by Section 11 to

"pay the interest upon said bonds as the same shall become due, from any funds subject to its control, from whatever source the same may come, and the payments upon the principal of said bonds, as the same shall be-

come due, shall be paid by the State Highway Commission from any funds within its control, without regard to the original of said funds."

Chapter 159, Laws 1919, which became effective February 25, 1919, provides for a license tax on gasoline and other motor vehicle fuels.

Chapter 173, Laws 1919, known as the Ten Million Dollar Road Bonding Act, became effective on February 26, 1919. Section 1 of this act declares that "the state highway fund shall hereafter consist of all moneys and revenues derived": (1) under Chapter 423, Laws 1917; (2) under Chapter 175, Laws 1917; (3) under Chapter 339, Laws 1913 (this chapter was expressly repealed by Section 17, Chapter 237, Laws 1917); (4) from the one-fourth mill tax provided for in Chapter 237, Laws 1917; (5) from all moneys accruing from licensing motor vehicles and chauffeurs and by law authorized to be diverted for road purposes; (6) from moneys derived from license tax levied on gasoline or motor vehicle fuels; (7) from the moneys derived "under the provisions of this act and acts amendatory thereof"; (8) from all moneys received from all other sources which by law are diverted for the improvement of the roads of the state; and (9) from the moneys derived from the operation of all laws which are hereafter enacted, and direct that moneys shall be used in the construction of roads. Section 4 authorizes the State Highway Commission

"during the next five years, to sell in addition to the bonds heretofore authorized, the bonds of the State of Oregon as hereinafter provided, in an amount not to exceed the sum of ten million dollars, ($10,000,000)."

Section 8 states that

"the money arising from the sale of each issue of bonds shall be deposited in the state treasury to the credit of

the state highway fund, which shall be used in carrying into effect the provisions of this act.''

This section further provides that ''the moneys derived from the sale of the bonds herein provided for shall be disbursed as follows'': (1) Seventy-five per cent shall be used in the construction of pavement and the betterment of hard surfaced highways designated in Chapter 423, Laws 1917; and (2) the remaining 25 per cent shall be expended in the discretion of the State Highway Commission (a) in the construction of other roads of any class included in the highway system set forth in Chapter 423, Laws 1917, and (b) in preparing and assisting counties in preparing grades, bridges and culverts. It is also provided, however, that ''nothing contained in this section shall prevent the highway commission from expending any of the said highway fund in carrying out the provisions of Section 15 of this act.'' Section 12 provides that any unexpended balance of fees received under Chapter 194, Laws 1917, remaining after the payment of expenses incurred in carrying out the provisions of the act and ''remaining after the appropriation of so much of said funds as has been or shall hereafter be made to make effective and carry out the provisions'' of Chapter 423, Laws 1917, shall be transferred to the highway fund to be expended under the jurisdiction of the State Highway Commission in payment of interest and principal upon the bonded indebtedness of the State of Oregon contracted for road purposes ''under the provisions of this act and prior highway legislation.'' Section 15 authorizes the State Highway Commission ''to use any moneys derived under the provisions of this act and to meet any sum or sums heretofore or hereafter apportioned to the State of Oregon by federal enactment for the construction, betterment or im-

provement of post roads, forest roads, and other permanent highways";

and the commission is authorized to do any act necessary to meet the requirements of the United States "and the officers acting under such federal statute."

Chapter 399, Laws 1919, is a motor vehicle act, and became effective March 4, 1919. This act provides for licensing motor vehicles and chauffeurs. Section 37 provides that the moneys remaining after the payment of the cost of administering the act shall be disposed of as follows: Three fourths shall be transferred to the state highway fund "for such purposes as are provided by law" and one fourth shall be remitted to the county treasurers.

Chapter 403, Laws 1919, is entitled an act "to further define and protect the state highway fund." This statute declares that nothing contained in Chapter 173, Laws 1919, "shall be construed to prevent issuance and sale of bonds of the State of Oregon for the purpose of meeting the conditions of the act of Congress set forth" in Chapter 175, Laws 1917, "but said bonds shall be issued as in said chapter provided, and no part of the state highway fund provided for" in Chapter 173, Laws 1919, "shall be used to meet any of said federal appropriation other than such portion of said fund as shall be derived from the sale of said bonds issued under the provisions of said Chapter 175."

The act of 1920 will not be discussed until the other statutes have first been disposed of.

1. The foregoing synopsis of state legislation enacted in 1917 and 1919 reveals the sources from whence, at the time of the commencement of this proceeding, came all the moneys available for road purposes, and shows what general or specific directions have been given by the legislative department concerning the ex-

penditure of those moneys. Chapter 173, Laws 1919, the Ten Million Dollar Road Bonding Act, gathers up all the road moneys and places them in one fund, called the state highway fund. Although all the road moneys are collected together and deposited in a single fund, yet every dollar of that fund is traceable to the source from which it came. In most instances the statute which supplies the source also gives specific directions concerning the expenditure of the moneys produced from that source, and sometimes, too, other statutes give different directions concerning the disposition of those same moneys. We need not notice any of the moneys which admittedly could not, as the law stood on December 4, 1919, be used for matching federal aid. In other words, we are not now concerned with the moneys which, for example, were required to be used for hard surfaced roads, nor with the moneys which were required to be used for paying the salaries and expenses of the State Highway Department; and hence we need not examine the phraseology of any parts of any statutes which deal with like moneys. At present our inquiry is confined to moneys available for federal aid. At this point in the discussion we may eliminate some of the state enactments from further consideration and by so doing concentrate our view upon such remaining statutes as are essential to a solution of the problem submitted to us.

Presumably there are no funds now remaining in the state highway fund which originated in Chapter 194, Laws 1917; and if there were any such funds they would not be available for matching federal aid, notwithstanding the fact that the act itself provides that, if the state accepts the Shakelford Bill, any balance in the "motor vehicle fund" on December 31, "shall be used for the purposes thereof." Section 2, Chapter

423, Laws 1917, directs that any unexpended balance of fees received under Chapter 194, Laws 1917, shall be expended under the jurisdiction of the State Highway Commission in payment of the interest and principal upon bonded indebtedness contracted for road purposes under the provisions of Chapter 423, Laws 1917, or Chapter 175, Laws 1917; and moreover, Section 12, Chapter 173, Laws 1919, declares that any surplus remaining from Chapter 194, Laws 1917, after paying the expenses shall be expended in payment of the principal and interest as the same shall become due upon bonded indebtedness contracted for road purposes under the provisions of Chapter 173, Laws 1919, "and prior highway legislation." We may therefore dismiss Chapter 194, Laws 1917, from further notice.

Chapter 399, Laws 1919, the Motor Vehicle Act now in force, directs that three fourths of the balance remaining after paying the expenses of administering the act shall be transferred to the state highway fund "for such purposes as are provided by law"; and since we must look to some other law to ascertain the "such purposes as are provided by law," we may with propriety dismiss Chapter 399, Laws 1919, from further notice.

Chapter 159, Laws 1919, merely provides for a license tax on motor vehicle fuels, without giving any specific directions concerning the expenditure of the funds. While such of these moneys as are diverted for road purposes are drawn to the state highway fund by force of Chapter 173, Laws 1919, still we need not longer consider Chapter 159, Laws 1919, and may now discard it.

We shall assume, without deciding, that Chapter 237, Laws 1917, stands alone, and that it is not in any particular affected by any other statute except to the extent that the tax levied under its authority is carried into the state highway fund by means of Chapter 173,

Laws 1919. If we consider Chapter 237, Laws 1917, by itself, we see that this chapter takes the one fourth of a mill tax and any other moneys which come into the fund there provided for and out of them first pays the salaries and expenses of the State Highway Department, and, if there is a balance remaining, it is next applied to the cost of maintaining state highways which have been improved, and then, if there is a surplus, it may be used to meet the requirements of the Shakelford Bill ''or any federal appropriation that may be hereafter provided.'' It is not contended that there is any surplus available under the terms of this act; but, upon the contrary, it is asserted on the one side and admitted on the other that there are no moneys now in the treasury available for matching federal aid, and that the need of moneys for meeting the requirements of the federal government is present and urgent. Even though it be assumed that some moneys may be available at some time in the future, those moneys could furnish no help at this moment when help is needed. For these reasons we may eliminate Chapter 237, Laws 1917, from further consideration.

Chapter 423, Laws 1917, does not relieve the emergency. This statute, it is true, outlines a road program by designating certain roads as hard surfaced roads, by naming others as post roads and by classifying others as forest roads. This statute, it is true, empowers the State Highway Commission to issue bonds to the amount of $6,000,000 and directs, by the terms of Section 5, that the funds derived from the sale of those bonds shall be deposited in the state treasury ''to the credit of a special fund, which shall be used in carrying into effect the provisions of this act.'' But it is also true that this statute further provides in Section 8, that—

"The funds with which to pay the portion of the expense of construction of said post roads and forest roads payable by the State of Oregon, shall be secured by the sale of bonds as is provided for in House Bill No. 21 (Chapter 175, Laws 1917) passed by the present legislative session."

Chapter 423, Laws 1917, may also be eliminated from further discussion.

By a process of elimination five of the statutes have been laid aside, and only three of the statutes in force on December 4, 1919, now remain for consideration. These three remaining statutes include Chapter 175, Laws 1917 (the Bean-Barrett Bill), Chapter 173, Laws 1919 (the Ten Million Dollar Road Bonding Act), and Chapter 403, Laws 1919. The legislation enacted in 1917 and 1919 does not authorize the sale of bonds to take advantage of the federal aid provided for by the federal act of February 28, 1919, unless it can be said that the authority is conferred by one or more of these three state enactments.

2. The State Highway Commission argues that Chapter 175, Laws 1917, contains language sufficiently broad to authorize the State Board of Control not only to issue sufficient bonds to meet the offer of the Shakelford Bill as originally enacted, $1,820,386.50 in amount, but also to issue bonds in the further sum of $3,789,731.77 which is the total amount of the additional aid offered by the federal act of February 28, 1919. The State Board of Control argues that its authority to issue bonds under Chapter 175, Laws 1917, is limited to $1,820,386.50, and that, having already sold bonds aggregating $1,200,000, it cannot during the remainder of the period specified in Chapter 175 sell any more bonds except to the amount of $620,386.50. The State Board of Control suggests, rather than contends, that the State Highway Commission has been granted au-

thority by the provisions of Chapter 173, Laws 1919, known as the Ten Million Dollar Road Bonding Act, to sell whatever bonds may be necessary in order to match the additional appropriation of $3,789,731.77 available under the terms of the federal act of February 28, 1919. The argument of the plaintiff is based upon the following words found in Section 2 of Chapter 175, Laws 1917: "or any other aid hereafter furnished by the United States." This argument made by the State Highway Commission cannot prevail, for the reason that it comes in conflict with Article IV, Section 20, of the state Constitution, which reads as follows:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

Turning now to the title of Chapter 175, Laws 1917, we find that it is entitled:

"An act to accept the benefits of the Act passed by the Sixty-fourth Congress of the United States, entitled 'An Act to provide that the United States shall aid the states in the construction of rural post roads, and for other purposes,' and to provide for the issuance of bonds of the State of Oregon to raise such money as may be required to meet the requirements of said Federal statute, and to authorize the State Board of Control to take such action and perform such duties as may be necessary to meet the requirements of said Federal Act and Federal officials acting under said Act."

The Shakelford Bill appropriated a definite sum of money to be apportioned among the states, and although the amount available to a given state might be increased from year to year by reason of the failure

of some other state to meet the requirements of the act, yet the total amount available to all the states was certain, and the amount available to Oregon was at least approximately certain. The title of Chapter 175, Laws 1917, speaks of but one subject. The title declares that the act is one to accept the benefits of the Shakelford Bill and to provide for the issuance of bonds to meet the requirements "of said federal act and federal officials acting under said act." The title speaks of only one federal act and that act is the Shakelford Bill. The title was, in effect, notice to every member of the legislature that, if he voted for the bill, he voted to authorize the State Board of Control to issue bonds in an amount sufficient to enable this state to receive its share of the fixed sum of money appropriated by the Shakelford Bill, but there was no notice whatever that a vote for the Bean-Barrett Bill was a vote to authorize the Board of Control to issue bonds to meet the requirements of some other federal act. The title of the Bean-Barrett Bill does not say that bonds can be issued to match any or all federal aid then or afterwards offered, but the title is specific and names only one offer of federal aid. The title was notice to every member of the legislature that a vote for the Bean-Barrett Bill was a vote to authorize the issuance of bonds amounting to $1,820,386.50 to meet the requirements of the Shakelford Bill only, and it was not notice that such a vote was also a vote to authorize the issuance of additional bonds amounting to $3,789,731.77 to meet the requirements of some other federal statute yet to be enacted. The title speaks of present aid only, and makes no reference to future aid. It is true that the Constitution does not require the title of the act to be a copy of the body of the bill, but it is manifest that the title contains no

notice whatever, not even a hint, that the body of the bill contains in it somewhere a clause referring to "other aid hereafter furnished by the United States." To give effect to the words last quoted would be to violate Article IV, Section 20, of the Constitution as that section is construed in *Clayton* v. *Enterprise Electric Co.*, 82 Or. 149, 156 (161 Pac. 411).

Treating the federal aid offered by the act of February 28, 1919, as "other aid" or additional aid, it is manifest that the Bean-Barrett Bill does not authorize the sale of bonds to match such "other aid" for the reason that the title of the Bean-Barrett Bill is not broad enough to embrace such "other aid," and therefore does not support that part of the body of the act. This conclusion, however, does not completely dispose of the contentions made by the plaintiff, for it is further urged that the Bean-Barrett Bill, by adopting the Shakelford Bill, as it existed in 1917, also adopted any changes that were afterwards made in it by amendment, and that, therefore, since the federal act of February 28, 1919, amends the Shakelford Bill, the amendment is adopted along with the Shakelford Bill.

3. The Bean-Barrett Bill sets out a complete copy of the Shakelford Bill, including its title and the date of its approval, and then accepts it. The Bean-Barrett Bill specifically designates the single law which it adopts, and as recently held in *State* v. *Ganong,* 93 Or. 440 (184 Pac. 233, 235), the amendment of an adopted statute does not, as between the adopting and the adopted statutes, affect the adopted statute when the adopting statute uses the form of reference employed by the Bean-Barrett Bill. Chapter 175, Laws 1917, does not authorize the Board of Control to issue bonds to match the federal aid offered by the act of February 28, 1919.

We now turn to Chapter 173, Laws 1919. This chapter as already pointed out gathers all the road moneys into a single fund; it provides in Section 4 for the sale of additional bonds to the amount of $10,000,000. It apportions and gives directions in Section 8 for the expenditure of the proceeds derived from the sale of those bonds, and also declares that "all of the state highway fund not otherwise specifically applied" shall be expended in the discretion of the State Highway Commission; and this section concludes by saying that "nothing contained in this section shall prevent the highway commission from expending any of said highway fund in carrying out the provisions of Section 15 of this Act." Turning to Section 15, the State Highway Commission is "authorized, empowered and directed to use any moneys derived under the provisions of this act" to meet any federal aid apportioned to Oregon. In other words, in despite of all the care and caution used in apportioning the "moneys derived under the provisions of this act" unrestricted authority is finally given to use "any" of those moneys to match federal aid "heretofore or hereafter apportioned" to Oregon. The language found in Chapter 173, Laws 1919, makes it fairly clear that, if moneys have already been "derived under the provisions of this act" and are actually in the state highway fund, those moneys may be used to match federal aid; but it is not so clear that the statute contemplates that any of the bonds therein provided for may be sold for the express and primary purpose of raising funds with which to match federal aid. Because of the statute enacted in 1920, and to which reference will subsequently be made, we do not find it necessary to determine whether the State Highway Commission is authorized by Chapter 173, Laws 1919, when standing

alone, to sell bonds for the purpose of raising funds to
match federal aid.   Chapter 403, Laws 1919, undoes
in part  at least what had been done by Chapter 173,
Laws 1919, for the former declares that ''no part of the
state highway fund provided for'' in Chapter 173, Laws
1919,''shall be used to meet any of said federal ap-
propriation other than such portion of said fund as
shall be derived'' from the sale of bonds under the
Bean-Barrett Bill.   It may be that the legislature in-
tended by the enactment of Chapters 173 and 403, Laws
1919, to require all federal aid available under the
Shakelford Bill to be met exclusively with bonds sold
under the Bean-Barrett Bill, and at the same time to
permit bonds to be sold under Chapter 173, Laws 1919,
for the purpose of meeting subsequent federal legisla-
tion offering aid.   If such were the intention of the
legislature, it is very doubtful whether appropriate
language was employed to express that intention so
far as it relates to the sale of bonds to meet subsequent
federal aid.   If such had been the intention of the
legislature, it would not have been difficult clearly to
express it.   It is clear, that the State Board of Control
has authority to sell bonds under the Bean-Barrett
Bill to meet the requirements of the Shakelford Bill;
but it is doubtful whether the State Highway Commis-
sion can sell bonds to match federal aid offered under
the act of February 28, 1919.

4. Counsel have outlined a course of argument which,
it is suggested rather than contended, may possibly
support the conclusion that Chapters 173 and 403, Laws
1919, when construed together, empower the State
Highway Commission to sell bonds to match federal
aid offered under the act of February 28, 1919.   It is
sufficient to say of this argument, so suggested, that
while it is ingenious, it lacks persuasiveness.   No

officer or board should be adjudged to possess authority to sell bonds obligating the state to pay millions of dollars unless such authority is conferred in clear and explicit language.

The legislature recently convened in a special session, which was held after the commencement of this proceeding, but before the hearing of the case, enacted a measure which has partially, if not largely, rendered the discussion of prior state legislation academic rather than practical. A bill for an act, known as House Bill No. 74, was passed by the House on January 16th, and by the Senate on January 17, 1920, and became an effective law on January 20, 1920, the date of its approval by the Governor. This statute again avows the state's acceptance of the Shakelford Bill, and it also expressly accepts the federal act of February 28, 1919. Section 2 of this act is as follows:

"The state highway commission of (or) officers having control of the state highways of the state of Oregon shall, out of the money received in the state highway funds of the state of Oregon each year from any and all sources, first set aside, if deemed necessary or expedient, a sufficient amount to comply with the terms of said federal acts and any other aid hereafter furnished by the United States for the construction of roads and highways or to match such federal aid; or if by reason thereof there will be any deficiency in said state highway funds in the judgment of such state highway commission or officers having control of the state highways and the said funds by reason thereof will be insufficient to take care of the construction of roads and pay interest on outstanding bonds in any such year or years, or if such state highway commission shall deem it necessary and expedient and for the best interests of the state of Oregon, to match and secure such federal aid under the provisions of said statutes of the United States hereinbefore mentioned or other federal aid hereafter furnished by the United States to the

state of Oregon for roads, then the state board of control of the state of Oregon is hereby authorized, empowered in its discretion each year to sell the bonds of the state of Oregon in such denomination as in its judgment will be most marketable and in an amount sufficient to raise enough money to equal the amount required of the state of Oregon, in order to fully meet the requirements, conditions and provisions of said federal statutes and the federal officials operating under said statutes or any other aid hereafter furnished by the United States for the construction of roads and highways."

5, 6. It will be observed that the language of the statute is that the State Board of Control is "authorized, empowered in its discretion" to sell bonds. The bill as originally introduced read thus: "Authorized, empowered and directed"; but in the process of its enactment the bill was changed by substituting the words "in its discretion" for the words "and directed." The statute as it now reads authorizes but does not compel the Board of Control to sell bonds. The Board of Control has authority under this statute "in its discretion" to sell sufficient bonds to enable the state to match federal aid available under the Shakelford Bill and under the federal act of February 28, 1919, but this court cannot, at least on the facts presented here, by a peremptory writ of *mandamus* compel the State Board of Control to sell bonds. The board has ample authority to sell bonds, but the law gives the board the right to exercise its discretion in determining whether it will use that authority. Even though it be assumed that Chapter 173, Laws 1919, authorized the State Highway Commission to sell bonds to meet federal aid, nevertheless it is plain that the act of 1920 withdraws that authority, and that the legislature in-

tended that all bonds to meet federal aid should be sold pursuant to the act of 1920.

In view of the language found in the act of 1920 it is difficult to conceive of a situation which would authorize the issuance of a writ peremptorily commanding the State Board of Control to sell bonds. If, however, such a situation is possible it is not presented here; for the record before us cannot support an order for a peremptory writ of *mandamus*. The demurrer to the alternative writ is therefore sustained.

DEMURRER SUSTAINED.