Argued March 20, affirmed March 21, 1951

IN THE MATTER OF THE GUARDIANSHIP OF GLENN D.
TRADER, INCOMPETENT

## ADMINISTRATOR OF VETERANS' AFFAIRS *v.*
## U. S. NATIONAL BANK OF PORTLAND, GUARDIAN
### 229 P. 2d 213

*Metta D. Baughman,* of Portland, Assistant Attorney, U. S. Veterans' Administration, argued the cause for appellant. With her on the brief was W. N. Rydalch, Chief Attorney, Portland Regional Office.

*Wilber Henderson,* of Portland, argued the cause for respondent. On the brief were Platt, Henderson, Cram & Dickinson, of Portland, and Roy A. McCourry, of McMinnville.

Brief filed by Will H. Masters, Attorney for Judiciary Committee, House of Representatives, as amicus curiae.

Before BRAND, C. J., and HAY, ROSSMAN, LUSK, LATOURETTE and TOOZE, Justices.

BRAND, C. J.

This is an appeal by the Administrator of Veterans' Affairs from an order made by the Circuit Court of Yamhill County dated 12 August 1949, approving the 16th annual account which was filed by the United States National Bank of Portland, as guardian of the estate of Glenn D. Trader, incompetent. In the report of the guardian it was alleged that the guardian was entitled to a credit against the guardianship estate in

the sum of $117.50 as the legal guardianship fee and commission for services rendered as guardian during the year covered by the accounting. Objections were made to the account by the Veterans' Administration upon the ground that the commission claimed by the guardian was in excess of 5 per cent of the annual income of the estate of the ward, and was therefore in violation of O.C.L.A., § 22-124 as amended by Chapter 273, Laws of 1943. It is the contention of the guardian that the 1943 amendment is unconstitutional. Upon motion of the Administrator, the cause was transferred from the County Court to the Circuit Court for Yamhill County. After hearing the cause, the Circuit Court held that the 1943 amendment was violative of Oregon Constitution Article IV, Section 20. It therefore overruled the objections of the Veterans' Administration and held that $117.50 is a reasonable amount to be allowed to the guardian, and authorized the said bank to receive said amount from the assets of the guardianship. The Administrator of Veterans' Affairs appeals.

The Administrator assigns as error the order of the court in overruling his objections to the allowance of a commission in the sum of $117.50 to the guardian. The same question is raised by Assignment of Error No. 2 which asserts that:

"The Circuit Court erred in holding that Section 22-124, O.C.L.A., is unconstitutional in that it violates the provisions of Section 20, Article IV of the Oregon Constitution."

The guardian in its brief argues, first, that Chapter 273 of the Laws of 1943 is invalid because violative of Section 20, Article IV of the Oregon Constitution, and also because of an alleged violation of Section 20 of

Article I of the Constitution (the Equal Protection Clause).

The only serious question in the case relates to the alleged violation of the constitutional provision which reads as follows:

"Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Constitution of Oregon, Article IV, § 20.

O.C.L.A., § 22-124, was originally enacted as Chapter 424, Laws of 1927. The title of that act reads as follows:

"Requiring guardians of minors, insane and incompetent persons receiving pensions, compensation, insurance or other benefit from the United States to serve certain petitions and accounts upon representatives of the United States government." The body of the act is as follows:

"Whenever a guardian has been appointed by any court of this state for the estate of any minor, insane or incompetent person, who is receiving or may thereafter receive compensation, insurance, pension or other benefit from the United States government, the department or bureau of the United States charged with the payment of such compensation, insurance, pension or other benefit may serve upon such guardian, and file with the clerk a notice requesting that a copy of all accounts, petitions for the sale, lease or mortgage of the property of the estate, and petitions for the investment of the funds of the estate, filed in said estate, shall be served upon a representative of the said department or bureau, to be designated in said notice, and thereafter it shall be the duty of such guardian to serve upon said representative a copy

of all such accounts and petitions before the same are filed in said estate. If any such guardian shall fail or refuse to file any account or report required by law the court shall, upon the petition of such representative of the United States government, make an order requiring such guardian to file said report or account or to show cause for failure so to do.''

The title to Chapter 273 of the Laws of 1943 reads as follows:

"To amend sections 22-123 and 22-124, O.C.L.A., relating to compensation and duties of guardians of wards."

Section 1 of said Chapter 273 purports to amend O.C.L.A., § 22-123, but makes no substantial change in that section. Section 2 of said Chapter 273 purports to amend O.C.L.A., § 22-124 which was Chapter 424 of the Laws of 1927, supra. The amendatory act of 1943 duplicates O.C.L.A., § 22-124 word for word, but also adds certain new provisions. With the first of these provisions we are not concerned. It purports to give to the governmental agency the right to 10 days' notice of the time set for hearing upon the guardian's account or petition. The additional matter with which we are concerned and which is added by the 1943 amendment reads as follows:

"*  *  * The guardian, under the direction of the court and without notice to any party except to the representative of such governmental department or bureau as hereinbefore provided, may invest the available funds of the ward in securities in which trust companies are permitted to invest trust funds, and shall make no other investments except under the direction of the court, upon petition, after 10 days' notice to all persons interested in the estate and hearing in open court. Compensation shall not be allowed to any guardian annually from any

moneys received from the United States in the form of compensation, insurance, pension or other benefit in excess of 5 per cent of the amount of said moneys received during the period covered by the account, and the revenue or profit from any property previously acquired therewith in whole or in part, except that additional reasonable compensation may be allowed after hearing where extraordinary services have been performed by the guardian.''

It will be observed that the title to Chapter 424, Laws of 1927, now O.C.L.A., § 22-124, is perhaps as restrictive in scope as any title to any act passed by the legislature. It gives notice that the body of the act will require guardians in certain types of case to serve certain petitions and accounts upon representatives of the United States government. Furthermore, the body of the act is strictly limited to the narrow purview of the title. Its constitutionality is conceded by the guardian. The new material added by the amendatory act of 1943, after reenacting all of the requirements of the 1927 act, goes further and expressly provides a restriction upon the power of the court to allow compensation to a guardian in the cases covered by the act. If the 1943 act had not been passed, then it is clear that the right of the guardian to compensation would have been controlled by the general statutes which authorize a court to award such compensation as it shall consider just and reasonable. O.C.L.A., § 22-126, and Oregon Laws, 1947, Sec. 20, Ch. 524. The 1943 amendment in effect purports to amend, as to a certain class of cases, the general statute concerning the method of fixing the fees of guardians. It purports to control that discretion, which the court would otherwise have, to award a fee deemed by it to be just and reasonable. It purports to limit the right of a guardian to receive

such fee. A person considering whether or not to accept appointment as guardian of an incompetent under the provisions of the 1927 act would have received no notice whatever from the title or the body of that act that there was any limitation upon his right to compensation other than the limitation imposed by the general statute under which the court fixes the fees of guardians. The legislative intent to be gathered from the title of the original act is clearly limited to the imposition upon certain guardians of the duty to serve certain petitions and accounts upon representatives of the United States government and the text of that act is strictly limited to the purpose stated in the title. Whether the 1943 amendment is within the subject expressed in the title to the 1927 act or is a matter properly connected therewith is the question for decision.

In considering the issue, we must be guided by the following accepted principles. Every legislative act is presumed to be constitutional. Section 20 of Article IV of the Oregon Constitution should receive a liberal construction if necessary to sustain the legislative intent, and before a statute is to be held void on the ground that its subject is not sufficiently expressed in the title, the conflict between the statute and the Constitution should be palpable and irreconcilable. *Miles v. Veatch,* 189 Or. 506, 220 P. 2d 511; *Lovejoy v. Portland,* 95 Or. 459, 188 P. 207. But, when properly construed, the constitutional provision is mandatory. *Anthony v. Veatch,* 189 Or. 462, 220 P. 2d 493; *State ex rel. Umatilla County v. Hawks,* 110 Or. 497, 222 P. 1071; *Brugger v. Wagner et al.,* 135 Or. 615, 297 P. 343.

In the following cases, among many others, legislative enactments have been held invalid by reason

of the violation of the requirements of Article IV, Section 20 of the Oregon Constitution. *First National Bank of Corvallis v. Benton County,* 175 Or. 485, 154 P. 2d 841; *State v. Beaver Portland Cement Co.,* 169 Or. 1, 124 P. 2d 524, 126 P. 2d 1094; *State ex rel. Pardee v. Latourette,* 168 Or. 584, 125 P. 2d 750; *Multnomah County v. First National Bank of Portland,* 151 Or. 342, 50 P. 2d 129; *Benson v. Olcott,* 95 Or. 249, 187 P. 843; *Gaston, Town of, v. Thompson,* 89 Or. 412, 174 P. 717; *State v. Perry,* 77 Or. 453, 151 P. 655; *Albany v. McGoldrick,* 79 Or. 462, 155 P. 717; *Singer Manufacturing Co. v. Graham,* 8 Or. 17.

■ Article IV, Section 20 of the Constitution contains a double-barreled mandate. First, that every act shall embrace but one subject, and second, that the subject of the act shall be expressed in the title. The 1927 act did embrace but one subject and that subject was expressed in the title. It follows from the further language of the Constitution that if by a subsequent amendment, a subject is embraced in that act which was not expressed in the title, then, "so much thereof as shall not be expressed in the title" "shall be void". No question arises in this case as to the sufficiency of the title to the amending act of 1943. We have repeatedly held that the title to an amending act is sufficient if it merely sets forth the section of the code which it is proposed to amend. *First National Bank v. Benton County,* supra; *Tompkins v. District Boundary Board,* 180 Or. 339, 177 P. 2d 416. The reason for this liberality as to the title of an amending act is, that upon enactment it becomes a part of the act amended and the title of the original act becomes the title of the act as amended. The crucial test therefore, is this: Could the amendment have been

included in the original act and under the original title thereto? *State v. Eaton et al.*, 119 Or. 613, 250 P. 233, and cases cited; *First National Bank of Corvallis v. Benton County,* supra, and cases cited; *State ex rel. Pardee v. Latourette,* supra. If it could, then the amendment will be held valid. If it could not, then such portion of the amending act as could not have been so included must be held void. In every instance the same test must be applied, whether the challenge be directed against a portion of an original act, *State v. Beaver Portland Cement Co.,* supra, or against a part or all of an amendment thereto. *State ex rel. Pardee v. Latourette,* supra. Under the Constitution, our inquiry is, first, what is the subject of the original act, and second, is the amendatory matter properly connected therewith, that is, with the subject of the act expressed in the title? As said by Justice HARRIS in *Lovejoy v. Portland,* supra:

"* * * The subject of the law is the matter to which the measure relates and with which it deals: 25 R.C.L. 842. The term 'subject' is to be given a broad and extensive meaning so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. The subject may be as comprehensive as the legislature chooses to make it, provided it constituted, in the constitutional sense, a single subject and not several, for the Constitution does not contain any limitation on the comprehensiveness of the subject: State v. Shaw, 22 Or. 287 (29 Pac. 1028)."

In the same case it is said that the "subject" includes the chief thing to which the statute relates. The words "matters properly connected therewith" include every matter germane to, and having a natural connection with, the general subject of the act. Again, it is said that the title of the act must express the

subject in language sufficiently comprehensive to include all the provisions in the body of the act, although the title need not be an index of the act. *State ex rel. Pierce v. Slusher,* 119 Or. 141, 151, 248 P. 358; *Starker v. Scott et al.,* 183 Or. 10, 190 P. 2d 532.

█ In determining the effect to be given to the constitutional provision, we may well have in mind the purposes sought to be accomplished by Article IV, Section 20. In *Lovejoy v. Portland,* supra, this court said:

"* * * This section of the Constitution was designed to do away with the several abuses, among which was the practice of inserting in one bill two or more unrelated provisions so that those favoring one provision could be compelled, in order to secure its adoption, to combine with those favoring another provision, and by this process of log-rolling the adoption of both provisions could be accomplished, when neither, if standing alone, could succeed on its own merits. Another abuse which developed in legislative bodies was the practice of concealing from the members of the legislature the true nature of the proposed law by giving it a false and misleading title, and to prevent surreptitious legislation in this manner is one of the objects of the Constitution. These and similar abuses inspired the adoption of Article IV, Section 20 * * *."

See also *Clemmensen v. Peterson,* 35 Or. 47, 56 P. 1015, wherein this court by Chief Justice WOLVERTON said:

"* * * it was designed by the framers of the constitution that in every case the proposed measure should stand upon its own merits, and that the legislature should be fairly satisfied of its purpose by an inspection of the title, when required to pass upon it, so as not to be surprised or misled by the subject which the title purported to express * * *."

In *State v. Perry,* 77 Or. 453, 151 P. 655, the body of a statute prohibited the furnishing of liquor to any person "sentenced to serve or serving a term in the Oregon state penitentiary." The title to the act was as follows:

"An act to prevent the * * * furnishing of intoxicating liquors * * * to any convict or prisoner *in* the Oregon state penitentiary." (Italics ours.)

In that case the court quoted with approval from Cooley, Constitutional Limitations, 7 Ed., p. 212:

"As the legislature may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters embraced in the title, but which must now be excluded because the title has been made unnecessarily restrictive. The courts cannot enlarge the scope of the title; they are vested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if in fact the legislature have not seen fit to make it so".

The court then said:

"This completely answers the argument of the state in the case at bar. The legislature might have included in the act the matter in issue here, but in the title of the act it saw fit to confine it to persons *in* the penitentiary, and under such a title it cannot be extended to a man who has been paroled and is out in business."

In the leading case of *State ex rel. Pardee v. Latourette,* supra, this court, by Mr. Justice BAILEY, again quoted with approval the same text from Cooley on

Constitutional Limitations. In that case the title of an act was limited to nonresident *owners* of motor vehicles using the highways of the state. An amendment attempted to include all nonresident *users* of motor vehicles on the highways of the state. The court said:

"If it had desired, the legislature could have included within chapter 359, Oregon Laws 1929, all nonresident operators of motor vehicles on the highways of this state. It limited the application of that act, however, by the title thereof, to non-resident owners of motor vehicles. We are not permitted to enlarge the scope of the enactment."

█ There is little, if any ground for misunderstanding of the rules heretofore repeatedly laid down by this court and to which we adhere. The title to an original act may be so drawn as to cover, broadly, the whole field included within any one legislative subject, and if so drawn, all matters properly connected therewith may be included in the body of the act. But the legislature is not required to adopt such a title. "* * * the legislature may make the title * * * as restrictive as they please * * *." If they elect to adopt a restrictive title, then they must limit the text of the act, or of any amendment thereto, within the limits of the restrictive title. Once it has been determined whether or not the substance of a proposed amendment could have been made a part of the original act, and within the subject thereof, as set forth in the title, the problem is solved. If the proposed amendment could not have been so included as a part of the original act, then it could not be added by an amendment. This is true, even though the title to the amending act might be broad enough to include the text of the amendment. The only reason that could be suggested for adopting

a new title to an amending act substantially different from the title to the original act would be because the legislature proposed to incorporate in the amending act matter which is foreign to the title of the original act. But, if that were done, then the incorporation of the amendment in the original act would result in the direct violation of the constitutional mandate, for more than one subject would then be embraced in the original act as amended.

There is a striking analogy between *First National Bank of Corvallis v. Benton County,* supra, and the pending case. In the Benton County case, the title, so far as material here, provided ''for the collection of taxes on personal property where such taxes may not become a lien on sufficient real property to'' ensure their payment. It did not embrace the repayment of taxes on tax exempt real and personal property. The court said, '' 'No one on reading this title would dream that it was intended to or did' include the repayment by counties of taxes on non-assessable property.'' The amending act was entitled, ''An Act to amend sections'', (specifying them by number) ''relating to assessment of property and taxes thereon.'' This court said:

''* * * The plaintiff directs our attention to this quoted title and argues that it is sufficiently comprehensive to include legislation for the repayment of taxes on non-taxable property. In this connection the plaintiff refers only to that part of the title reading thus: 'relating to assessment of property and taxes thereon.' It would ignore entirely the remainder of the title. We do not believe that the last quoted phrase, describing the acts intended to be amended, adds in any way to the title of which it is a part: Egekvist Bakeries, Inc., v. Benson, 186 Minn. 520, 243 N. W. 853. The

title has reference to the amendment of certain sections of the code, and the validity of those sections as amended is determined by the titles of the acts which originated them: State ex rel. Umatilla County v. Hawks, supra; State ex rel. Pardee v. Latourette, supra. Nothing more is undertaken by chapter 490, Oregon Laws 1939, than the amendment of certain designated sections of the code."

*Egekvist Bakeries, Inc. v. Benson,* cited by the court, makes the meaning of our opinion in the Benton County case doubly clear. An act had been passed by the Minnesota legislature under the title "An act regulating the weight of bread." Thereafter an amendatory act was passed entitled "An act to amend Sections 2 and 3, Chapter 351, General Laws 1927, relating to the weight and sanitary wrapping of bread." The Minnesota court said:

"As was held in State v. Smith, 35 Minn. 257, 28 N. W. 241, an amendatory act, entitled as such and nothing more, must remain not only within the title, but also germane to the actual subject-matter of the amended act. The act now involved offends both limitations. In requiring wrapping, it goes beyond both title and scope of the original act. Neither made reference to wrapping of bread. Both were concerned only with regulating weight. It is a misleading misnomer to call a later act, concerning wholly the wrapping of bread, amendatory of the former law concerning weight only. It is distinctly new legislation on a new subject.

"The law of 1931 is not helped by the concluding phrase in the title 'relating to the weight and sanitary wrapping of bread.' When that phrase is reached, the act is already limited to amending old law. The qualifying words characterize old law to be changed rather than a new subject of new law. It is deceptive, unintentionally so of course, but deception is the very thing barred by the constitu-

tional requirement that acts of the Legislature must have unity of subject and keep within the fair meaning of their title. The question is whether such a qualifying phrase can allow legislation on a new and distinct subject not covered by the former law to the amendment of which the title expressly restricts the new law. We think not.

"* * *

"Just as plainly, the act here under attack attempts to bring in an entirely new subject. It is, therefore, a new and independent and not an amendatory act. State v. Palmquist, 173 Minn. 221, 217 N. W. 108. So, obviously, it is outside the field marked by its title. The title of the original act was narrowly restrictive. It might have been general and inclusive, but was not. * * *"

Thus it is clear, in the case at bar, that the qualifying words in the title of the amending act of 1943 characterize old law to be amended rather than a new subject of new law. When the words "relating to compensation and duties of guardians of wards" are reached, "the act is already limited to amending old law", i. e., O.C.L.A., § 22-124.

Under the ruling of the Benton County case, we must construe the title of the amending act as referring to the original act and not as a new title of a new act. If, on the other hand, it should be contended that the title to the amending act introduced a new subject not germane to the original act, then the provisions in the body of the amending act which are certainly not germane to the subject of the original act must, as we have previously said, be held invalid because then, two different legislative subjects would be incorporated in the original act contrary to the mandate, "every act shall embrace but one subject", etc. Since the manifest intent is to amend and not enact a new

statute, there is no escape from the dilemma thus presented.

In a laudable desire that the form of proposed legislation should conform to the constitutional mandate, the Judiciary Committee of the House of Representatives, which is now in session, has caused to be filed a brief amicus curiae. They ask the court to answer certain special questions and to answer them quickly. (1) We are asked to state the purpose and intent of Section 20, Article IV of the Constitution. We have quoted the opinions of this court which long since answered that question. However, we hold that the language of that section is so clear that we are bound by it without further inquiry into the "intent". (2) The brief presents the question, "May not an act be expanded by amendment beyond the scope of the original title?" What we have said in previous cases, and have repeated here, indicates that the question must be answered in the negative. A direct answer to the question was given in *First National Bank v. Benton County* and in *Tompkins v. District Boundary Board,* both supra, and both of which state the necessary conclusion which must be drawn from earlier cases. The third question presented is "May sections from different original acts be amended in one bill regardless of the titles of the original acts?" The question as stated, is broad and indefinite and presents issues not relevant to the pending case. We must therefore decline to express any opinion upon it, or upon the validity of the pending bills to which the brief refers. We reiterate, however, that the substance of an amending act must be germane to the subject of the act to be amended as that subject appears in the title. If this rule be followed, and if in addition,

the amending act designates the act which it purports to amend, the legislation will not violate the constitutional provision. The brief of amicus curiae inquires, "Once an act has become a law, is there any reason why the title of the bill by which it was enacted should constitute an arbitrary limitation on future amendments?" Our answer is that the constitutional provision is reason enough.

■ It is always unfortunate when it becomes the duty of this court to declare unconstitutional legislation passed for a meritorious purpose, but we are the servants of the Constitution and of the people who enacted it and not the masters. We hold that the provision of the 1943 act limiting the compensation of the guardian to 5 per cent of the amount of moneys received during the year introduces a new and different subject which is not embraced in the title of the 1927 act and which is not a matter properly connected with the subject of that act. The legislature is not unduly hampered by this rule of the Constitution. If an original act has been given an unduly restrictive title, it may be repealed and a new act, with a broader title may be adopted which may include all of the matter contained in the original act, plus such new matter as is germane to the subject stated in the broader title. No general rule can be laid down which will decide in advance what new matter is "properly connected" with the subject of an earlier act, for each case depends upon its own facts.

■ We find no merit in the contention that the 1943 amendment is violative of Section 20 of Article I of the Constitution. That section provides:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which,

upon the same terms, shall not equally belong to all citizens."

Both the state, and in many instances, the federal government, have a special interest in the care and support of incompetent persons who are receiving support from the United States government out of public funds, and the legislature violates no rule of equal protection in singling out that class of persons for special treatment. The work of the guardian in these cases may be just as onerous as in other cases, but there are reasons of public policy regulating their compensation, which do not exist in the case of guardianship over funds derived from private sources. If a guardian should elect to accept appointment in a case of this kind, he would do so cum onere. The order of the Circuit Court is affirmed.